EXHIBIT A

# AGREEMENT

betweens

## ALLIED BUILDING METAL INDUSTRIES, INC.

and

## ARCHITECTURAL AND ORNAMENTAL IRON WORKERS LOCAL UNION NO. 580

July 1, 2005
Through
June 30, 2008

54



## NUMERICAL SECTION(S) INDEX

|       |                                |  *Page* |
|-------|--------------------------------|------|
| I     | Preamble and Purpose ........  | 1    |
| II    | Recognition .................  | 2    |
| III   | Union Contracts ............   | 4    |
| IV    | Territory Covered ...........  | 4    |
| V     | Work Covered ...............   | 4    |
| VI    | Employment Procedure .......   | 9    |
| VII   | Hours of Work .............    | 9    |
| VIII  | Holidays and Overtime .......  | 15   |
| IX    | Wage Rates .................    | 16   |
| X(A)  | Wage Conditions ............   | 22   |
| X(B)  | Package Redistribution .......  | 24   |
| X(C)  | Assessment Check-Off ........   | 24   |
| XI    | Reporting Time .............    | 25   |
| XII   | Traveling Expenses ...........  | 26   |
| XIII  | Foremen ....................    | 27   |
| XIV   | Steward ....................    | 28   |
| XV    | Work Limitation .............   | 29   |
| XVI   | Tools .....................     | 30   |
| XVII  | Workers' Compensation .......   | 31   |
| XVIII | Business Representative .......  | 32   |
| XIX   | Subcontracting .............    | 32   |
| XX    | Apprentices ................    | 32   |
| XXI   | Grievance and/or               |      |
|       | Arbitration Procedures .......  | 35   |
| XXII  | Vacation Fund ..............    | 37   |
| XXIII | Pension Fund ...............    | 39   |
| XXIV  | Insurance Fund (Welfare) .....  | 40   |

i

| | | *Page* |
|---|---|---|
| XXV | Annuity Fund | 42 |
| XXVI | Ornamental Metal Institute of N.Y. Fund | 43 |
| XXVII | Apprentice-Journeyman Educational Fund | 45 |
| XXVIII | Institute of the Ironworking Industry Fund | 46 |
| XXIX | Pensioners' Supplemental Fund | 47 |
| XXX | Scholarship Fund | 48 |
| XXXI | IMPACT | 50 |
| XXXII | Trust Fund Protection | 50 |
| XXXIII | Strikes and Lockouts | 56 |
| XXXIV | Protection of Union Principles | 57 |
| XXXV | Union Members as Contractors | 57 |
| XXXVI | Adherence to the Agreement | 59 |
| XXXVII | Record Keeping | 59 |
| XXXVIII | Severability and Saving Clause | 60 |
| XXXIX | Male Gender | 60 |
| XXXX | Equal Employment Opportunity | 60 |
| XXXXI | Safety Provisions | 61 |
| XXXXII | Term of Agreement | 61 |

Schedule "A" - Members of the Association  64
Exhibit 1 - Employer Report  70
Rider A - Assignment Form  71
Appendix A - Collection Notice  72

ii

**ALPHABETICAL SECTION(S) INDEX**

| | *Page* |
|---|---|
| Apprentice-Journeyman Educational Fund | 45 |
| Apprentices | 32 |
| Assessment Check-Off | 24 |
| Business Representative | 32 |
| Employment Procedure | 9 |
| Equal Employment Opportunity | 60 |
| Exhibit I | 70 |
| Foremen | 27 |
| Grievance and/or Arbitration Procedures | 35 |
| Holidays and Overtime | 15 |
| Hours of Work | 9 |
| IMPACT | 50 |
| Institute of the Ironworking Industry Fund | 46 |
| Insurance Fund (Welfare) | 40 |
| Male Gender | 60 |
| Ornamental Metal Institute of N.Y. Fund | 43 |
| Package Redistribution | 24 |
| Pension Fund | 39 |
| Pensioner's Supplemental Fund | 47 |
| Preamble and Purpose | 1 |
| Protection of Union Principles | 57 |
| Recognition | 2 |
| Record Keeping | 59 |
| Reporting Time | 25 |
| Rider A | 71 |
| Safety Provisions | 61 |
| Schedule "A" - Members of the Association | 64 |

iii

|                                          | *Page* |
| ---------------------------------------- | ------ |
| Scholarship Fund                         | 48     |
| Severability and Saving Clause           | 60     |
| Steward                                  | 28     |
| Strikes and Lockouts                     | 56     |
| Subcontracting                           | 32     |
| Term of Agreement                        | 61     |
| Territory Covered                        | 4      |
| Tools                                    | 30     |
| Traveling Expenses                       | 26     |
| Trust Fund Protection                    | 50     |
| Union Contracts                          | 4      |
| Union Members as Contractors             | 57     |
| Vacation Fund                            | 37     |
| Wage Conditions                          | 22     |
| Wage Rates                               | 16     |
| Work Covered                             | 4      |
| Work Limitation                          | 29     |
| Workers' Compensation                    | 31     |

**Local Union No. 580 Agreement**

(Effective July 1, 2005 - June 30, 2008)

## I.     PREAMBLE AND PURPOSE

THIS AGREEMENT is made and entered into effective July 1, 2005, by and between ALLIED BUILDING METAL INDUSTRIES, INC., including its successors or assigns (hereinafter referred to as the "Association") for and on behalf of its members whose names appear on Schedule "A" (hereinafter referred to jointly and individually as the "Employer") including their successors and assigns and including in such term such companies that may hereafter become members of the Association, and ARCHITECTURAL AND ORNAMENTAL IRON WORKERS LOCAL UNION NO. 580 OF THE INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS affiliated with the AFL-CIO (hereinafter referred to as the "Union").

This Agreement is entered into by collective bargaining to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between Employer and Union in this trade and to prevent waste, unnecessary and avoidable delays and expense, and, so far as possible, to provide for labor's continuous employment, such employment to be in accordance with the conditions

iv

1

herein set forth and at wages herein agreed upon; also, that stable conditions may prevail in the building industry and building costs may be as low as possible, consistent with fair wages and conditions, and, further the establishment of the necessary procedures by which these ends may be accomplished.

It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, it being understood that the claims are subject to trade agreements as well as the decisions and awards rendered by the Building Trades Employers' Association of the City of New York made pursuant to the Joint Trade Arbitration Plan of the New York Building Trades adopted July 9, 1903 with respect to all jurisdictional disputes which may arise under this Agreement.

## II.    RECOGNITION

(a) The Association and the individual Employers recognize the Union as the exclusive representative of its employees in the performance of the work set forth in Section V below, for the purposes of collective bargaining as to wages, hours and other conditions of employment.

(b) In order to protect and preserve for the employees covered by this Agreement all work historically and traditionally performed by them, and in order to prevent any device or subterfuge to avoid the protection or preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work on a job site of the type covered by this Agreement as a single or joint Employer, a successor to a signatory company and/or alter ego of a signatory to the Agreement (which shall be interpreted by the impartial arbitrator pursuant to applicable NLRB and judicial principles) within the trade or territorial jurisdiction of the Union, under its own name or under the name of another, as a corporation, sole proprietorship, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners, or stockholders) exercises either directly or indirectly (such as through family members) controlling or majority ownership management or control over such other entity, the terms and conditions of this Agreement including but not limited to the arbitration, wage and fringe benefit provisions of this Agreement, shall be applicable to all such work performed on or after the effective date of this Agreement. The foregoing shall not be interpreted to apply to separate Employer situations. It is not intended that this Article be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

2

3

### III.    UNION CONTRACTS

The Union will not furnish any employees to the Employer until and unless signed copies of the trust fund Agreements between the Union and the Employer are filed with the trust fund office within fifteen (15) days after the Employer is furnished with employees.

### IV.    TERRITORY COVERED

The territory covered by this Agreement shall be known as the Metropolitan District, and shall embrace the Boroughs of Manhattan, Bronx, Brooklyn, Richmond and Queens in the City of New York and Westchester, Suffolk and Nassau Counties, in the State of New York.

### V.    WORK COVERED

The Employer agrees that he will employ Architectural and Ornamental Iron Workers on the handling from the arrival at the site of the job and on the erection of, including but not limited to, the following items of work:

All iron, steel, bronze, aluminum, stainless, brass, copper, porcelain, ferrous and non-ferrous metals as used in the fabrication and for the erection of all Architectural, Ornamental and Miscellaneous Iron work.

Interior and exterior stairs, fire escapes, catwalks, gratings, shelf angles, pipe railings and hand railings; ladders, ship ladders, bridge and overpass railings, when not erected with structural steel; trench frames and plates, facia plates, brackets, saddles, wainscoating, monorails, ovens, pans, stacks or flues over 10 gauge, scales, sun shades, subway ventilators and frames, rolling shutters, grills and doors, overhead and pier doors, fire doors, louvres, pallet and other type racks, protective shield walls, radiation rooms, lead bricks and walls, lead sheeting, flag and other poles, tray rails, counter display cases, display cases used in schools and lobbies, marquees and canopies, spandrels, skylights, including but not limited to steel skylights; expanded metal, wire and fibrous rope work of all descriptions, gates, door bucks and doors, store fronts and entrances, chain link plastic, synthetic and picket fences, fence framework, guide rails, barrier rails, expansion joints and plates, gym and playground equipment, metal wardrobes, lockers, shelving, library stacks, book stacks, hospital and laboratory cabinets and equipment, metal furniture, panel and work stations, space concepts and modified furniture, jail and cell work including beds, benches, bunks, chairs, tables, mirrors, access doors and locks, mail and other chutes, balcony rails and dividers, elevator bucks, dust covers, fronts and doors and hardware, lettering, toilet partitions, enclosures, jetways, blast fences; plastics, vinyl plastic handrails, porcelain panels,

interior and exterior metal curbing, automatic doors, including but not limited to automatic revolving and sliding doors including their repair, replacement and replacement of components, cornices, firing range equipment, stabilizer clips, toll booths, supports for E-Z Pass tolls, vinyl plastic grating, agent and ticket booths, amusement equipment, atriums, awnings, bulkheads, cart lift fronts, column covers, coping, docks and dock levelers, duct supports, electrical supports, escalator trim, greenhouses, Geodesic and other domes, guardhouses, guards, guard cables, girders, hoppers, metal seats, seating, bench seats, modular buildings, ornamental space frames, panic devices and locks, pipe supports, plaques, platforms, poster frames, plate pit liners, radiator enclosures, revolving doors, room dividers, security doors, shoring, sills and sill plates, slope walls, smoke baffles, smoke plates, soffits, sound barriers, target ranges, target range baffles, turnstiles, unistrut canopies, window cleaning equipment, window washing hooks, window washer tracks, x-ray equipment, x-ray supports and all hardware. All vinyl and plastic ladders, catwalks, beams, columns, channels, handrails, column covers, stairs, grating, all light gauge metal studs and framing, and Alucobond panels. On highway and roadwork, all headlight blinders including but not limited to rubber, vinyl, plastic seats and benches. Street, highway, airport and any other signs of an architectural, functional or decorative nature. Bollards that are

mechanically fastened; stair bull nosing that is mechanically fastened; architectural wind walls; pre-glazed glass, aluminum fabric plastic and metal covered walkways, bird nuisance nylon netting, stainless steel cable and clips, plastic bird spikes – caulked and fastened; car lifts for parking space savers.

Weir plates — steel and aluminum, corner guards, bumper pads and bumpers, reflectors and deflectors, swimming pool equipment and domes, solarium and roof enclosures, guard rails — all types metal and hanging ceilings, mobiles and permanent statuettes of all types and modern sculpture; exterior and interior panel walls, any metal (claded), valets (all metal).

Curtain wall including unitized systems of any type or combination of materials, as well as solarized, pre-glazed curtainwall and panels; window wall, metal facades, insulated or non-insulated panels, GFRC panels, Reynold Bond panels, factory or field assembled Q panels, metal windows and casings, blinds and pockets, window stools, enclosures, operating devices and all sealants and caulking used to seal metal to metal regardless of type of sealant used.

Canvas material, canvas coverings, temporary enclosures of curtain wall; seismic and C.M.U. clips and brackets and any substitute system whether or not prefabricated, regardless of the material,

6

7

including but not limited to fiberglass; P.O. boxes and mailboxes; headlight blinder deflectors; chevron signs and posts; dismantling of stairs and canopies; non-structural steel tubes; round, boxed and rectangular wall grommets; stainless steel cables for suspension of walls; metal temporary stairs; vinyl coated metal handrails; davits and pedestals; kiosks, window guards, safe deposit boxes, brick veneer face panels; crash attenuators.

Stage equipment, stage lifts, traps, scenery lifts, counter weight systems, stage rigging, asbestos or other fire curtains, tracks, turntables, stage wagons.

The setting, adjustment, repair and alteration of all metal and preglazed sash.

Dismantling of all the above items when it is not to be junked.

Firewatch in connection with the welding or burning of any of the above items. All fibrous and fiberglass material in conjunction with and as substitutes for ornamental and architectural ironwork.

Built-in items are not included. However, any fabrication or refabrication including welding, burning or fastening of built-in items at the job site is the work of the Ornamental Iron Worker.

The operation and maintenance of welding machines, hi-lo's and pallet jacks in connection with any of the above items is exclusively within the jurisdiction of the Architectural and Ornamental Iron Workers Local 580.

Any Employer signatory to this Agreement who contracts for any of the above-enumerated items is required to assign same to Architectural and Ornamental Iron Workers represented by Local Union No. 580. However, if a decision rendered by any recognized tribunal which has authority to do so, awards any of the items of work specified in this Article to another Union, the Companies shall not thereafter be obliged to employ Architectural and Ornamental Iron Workers on the particular job site for that item of work and the decision shall not be applicable to other job sites unless it specifically provides for a broader scope of application.

## VI.    EMPLOYMENT PROCEDURE

The Employer may hire any journeyman finisher he requires either directly at the shop or job site, or may call the Union for such employees. The Employer shall have the right to discharge any employees whenever he sees fit except stewards as provided for under this Agreement.

## VII.    HOURS OF WORK

(a)  Seven (7) hours shall constitute a day's work between the hours of 8:00 a.m. and 12:00 Noon and between 12:30 p.m. and 3:30 p.m. from Sunday through Saturday inclusive. Provided however, that

8

9

upon notice to the Union, the Employer shall have the right to alter the regular day's work on any job to 7:00 a.m. to 2:30 p.m., 7:30 a.m. to 3:00 p.m., or, from June 1 – September 30, 6:30 a.m. to 2:00 p.m. The aforementioned notice must be given no later then the Thursday immediately preceding the work week during which the flexible schedule shall commence. Such altered hours of work shall remain in effect for a minimum of one (1) work week.

(b)  Time and one-half shall be paid for all work in excess of seven (7) hours, at the end of the work day to a maximum of two (2) hours on any regular work day (the eighth (8th) and ninth (9th) hours of work) and double time shall be paid for all work thereafter. Time and one-half shall be paid for all work on Saturday up to seven (7) hours and double time shall be paid for all work thereafter. Work on Saturday which commences at times other than the normal hours established for the job from Monday through Friday of that workweek (notwithstanding how such hours were established) shall be paid at the rate of double time. This double time requirement shall not apply when the Employer must work such different hours due to a requirement set forth in a permit. The double time rate shall only be applicable for the hours that do not coincide with the hours scheduled for the job for that work week, not for all the hours worked. This provision shall not be applicable to any hours worked on Saturday in accordance with the special rules set forth in Section VII (d). All such Saturday hours shall be paid for at the rate of time and one-half. Work on Sundays and Holidays shall be compensated at the rate of double time. Work performed during the mid-day recess as instructed by an authorized employer representative shall be paid for as triple time and men so working shall receive one-half (1/2) hour lunch period.

(c)  When two or three shifts are employed on a job, Monday through Friday, the work day for each shift shall be seven (7) hours and the men on such shift shall be paid ten and one-half (10 1/2) hours' pay at the single time rate for each day completed. When any shift does not complete the full seven (7) hours on such a job on account of weather or other unforeseen circumstances beyond the control of the employees or Employer, the employees on such shift shall be paid at the rate of one and one-half (1 1/2) times the single time rate for hours worked. It is understood that there will be no second or third shift on any job of less than 5 days' duration.

When two or three shifts are worked on Saturday, Sunday or holidays, each shift shall be seven (7) hours and the men on such shift shall be paid fifteen and three-quarters (15 3/4) hours' pay. When any shift does not complete the full seven (7) hours on such a job on account of weather or other unforeseen circumstances beyond the control of the employees or Employer, the employees on such shift shall be

10

11

paid at the rate of two and one-quarter (2 1/4) times the single time rate for hours worked.

The Employer, with prior notification to the Union, shall have the option of working two twelve (12) hour shifts in lieu of the three seven (7) hour shifts provided above. In that event the shifts shall commence at Noon to Midnight and Midnight to Noon with Midnight to Noon being the first shift. When twelve (12) hour shifts are utilized each shift shall work twelve (12) hours and the men on such shift shall be paid twenty (20) hours' pay. When any shift does not complete the full twelve (12) hours on such a job on account of weather or other unforeseen circumstances beyond the control of the employees or Employer, the employees on such shift shall be paid at the rate of one and two-thirds (1 2/3) times the single time rate for hours worked. When twelve (12) hour shifts are worked on Saturday, Sunday or holidays, the men on such shifts shall be paid thirty (30) hours' pay. When any shift does not complete the full twelve (12) hours on such a job on account of weather or other unforeseen circumstances beyond the control of the employees or Employer, the employees on such shift shall be paid at the rate of two and one-half (2 1/2) times the single time rate for hours worked.

(d) Notwithstanding anything to the contrary contained in this collective bargaining agreement, upon seventy-two (72) hours notice to the Union, on all alteration work (excluding curtain wall but including all architectural metal work below the curtain wall) on existing or occupied buildings or other facilities which remain in use where the Employer is required to work other than the normal work hours (including flexible hours as set forth in sub-paragraph (a) above), off hours work can be scheduled for any time of the day in accordance with the following: Monday through Friday — employees shall work seven (7) hours for which they will receive eight (8) hours pay at regular straight time rates, all overtime shall be paid at time and one-half the regular straight time rates; Saturday — all work shall be paid at time and one-half the regular straight time rate; Sundays and Holidays — time and one-half the regular straight time rate shall be paid for all work up to seven (7) hours and double time shall be paid for all work thereafter. It is agreed that the term "facilities" shall cover commercial construction, not highway work. With regard to such "off hours" work involving highway guardrails, signs and related work which occurs Monday through Friday employees shall work seven (7) hours for which they shall receive nine (9) hours pay at regular straight time rates. In the event the employees are working an eight (8) hour day as provided in paragraph (e) below, the employees shall be paid for 10 hours at straight time rates for eight (8) hours of work. All overtime, Saturday and Sunday work involving highway guardrails, signs and related work which occurs

12

13

during "off hours" shall be paid in accordance with the provisions applicable for all other "off hours" alteration and renovation work.

When such "off hours" work starts on one calendar day and continues through the following calendar day, the rules applicable at the beginning of the "off hours" work shall be applicable for all hours worked. As an example, if such "off hours" work starts on Friday night at 11:00 p.m. and continues until 6:30 a.m. on Saturday, the rules applicable for Friday "off hours" shall be applicable for all seven hours worked. If overtime is thereafter worked, the rules applicable for Friday "off hours" overtime shall be applicable. Similarly, if such "off hours" work starts at 11:00 p.m. Sunday night and continues until 6:30 am Monday, the rules applicable for Sunday "off hours" shall be applicable for all seven hours worked and any overtime shall be worked under the rules applicable to Sunday "off hours" overtime.

(e) When working in conjunction with the Teamsters and Laborers on an eight (8) hour basis on fence, guardrail and sign structures, the employer may, after notification to, and consent by Local 580, employ Local 580 members on an eight (8) hour basis at straight time rates. When working an eight (8) hour day as set forth herein,, time and one-half shall be paid for all work in excess of eight (8) hours at the end of the workday to a maximum of two (2) hours

14

on any regular work day (the ninth (9th) and tenth (10th) hours of work) and double time shall be paid for all work thereafter. [See subparagraph (d) above for rates applicable when such work is performed under the conditions set forth therein.]

## VIII.   HOLIDAYS AND OVERTIME

(a)   The following holidays shall be observed: NEW YEAR'S DAY, PRESIDENTS DAY, MEMORIAL DAY, INDEPENDENCE DAY, LABOR DAY, THANKSGIVING and CHRISTMAS DAY.

All holidays shall be observed on the day designated by New York State Law. In the absence of such designation it shall be on the traditional calendar day. Any holiday which occurs on a Sunday shall be observed the following Monday. No work shall be performed on Labor Day except to save life or property.

(b)   Overtime shall not be worked except where unavoidable. When there is overtime work to be done on any job, preference must be given to the men who are working regularly on such job. Extra men hired for overtime work must be unemployed if any are available.

15

## IX.    WAGE RATES

Effective 7/01/05, wage rates shall be increased by $1.00 per hour.

Thereafter, the total economic increases for wage rates and contributions to the Vacation, Pension, Insurance (Welfare), Annuity, Ornamental and Apprentice-Journeyman Educational Trust Funds, as well as such other Trust Funds as may be created jointly by the Union and the Association, shall be as follows: $1.00 per hour effective 1/01/06; $1.00 per hour effective 7/01/06; $1.00 per hour effective 1/01/07; $1.25 per hour effective 7/01/07 and $1.25 per hour effective 1/01/08. The Union shall have the right to allocate these amounts between increases in wage rates and increases in Employer contributions to the foregoing Trust Funds subject to the following conditions:

1.  In each year the Pension and Insurance (Welfare) Trust Funds will receive whatever increased amounts, the Actuary states in writing to the Trustees of these Funds, are needed to support the then current benefits.

2.  The level of contribution to any fringe benefit fund(s) shall not exceed the limit set by the Internal Revenue Service for tax deductibility by the Employer of such contribution(s).

The specific distribution of the economic package is further set forth herein.

16

A.    FOREMAN

The Foreman shall receive not less than $1.00 per hour above the Finisher's hourly rate set forth below.

B.    FINISHER

August 1, 2005                $38.05 per hour

(For the period July 1, 2005 – July 31, 2005 the hourly wage rate shall be $39.05)

C.    APPRENTICE

First four months (1-4 months)
60% of Finisher's wage

Next six months (5-10 months)
65% of Finisher's wage

Next six months (11-16 months)
70% of Finisher's wage

Next six months (17-22 months)
80% of Finisher's wage

Next six months (23-28 months)
85% of Finisher's wage

Last eight months (29-36 months)
95% of Finisher's wage

At the end of 3 years and after examination
100% of Finisher's wage

D.    FUNDS
1.    Vacation Fund (See Section XXII)

17

$7.85 per hour for all employees performing covered work within the meaning of Section V of this Agreement except Apprentices for whom contributions to the Vacation Fund shall be made at the same percentage level as the wages they receive. For example, if an apprentice is receiving sixty percent (60%) of the Finisher's wage, he shall receive sixty percent (60%) of the Vacation Fund contribution, etc. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

2.  Pension Fund (See Section XXIII)

$6.39 per hour for all employees performing covered work within the meaning of Section V of this Agreement including apprentices. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

3.  Insurance Fund (Welfare) (See Section XXIV)

$8.99 per hour for all employees performing covered work within the meaning of Section

18

V of this Agreement including apprentices. (*) (For the period July 1, 2005 – July 31, 2005, the hourly contribution to the Insurance Fund shall be $7.99 per hour)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

4.  Annuity Fund (See Section XXV)

$8.32 per hour for all employees performing covered work within the meaning of Section V of this Agreement except apprentices for whom contributions to the Annuity Fund shall be made at the same percentage level as the wages they receive. For example, if an apprentice is receiving sixty percent (60%) of the Finisher's wage, he shall receive sixty percent (60%) of the Annuity Fund contribution, etc. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

5.  The Ornamental Metal Institute of New York Fund (See Section (XXVI)

$ .30 per hour for all employees performing covered work within the meaning of Section

19

V of this Agreement, including apprentices. At the option of the Association, the contribution to The Ornamental Metal Institute of New York shall be increased during the course of this Agreement a maximum of $ .10 per hour bringing the total contribution to $ .40 per hour.

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

6.  Apprentice-Journeyman Educational Fund (See Section (XXVII)

$1.25 per hour for all employees performing covered work within the meaning of Section V of by this Agreement including apprentices. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

7.  Institute of the Ironworking Industry Fund (See Section (XXVIII)

$ .02 per hour for all employees performing covered work within the meaning of Section V of this Agreement, including apprentices. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

8.  Pensioner's Supplemental Fund (See Section XXIX)

$ .60 per hour for all employees performing covered work within the meaning of Section V of this Agreement, including apprentices. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

9.  Scholarship Fund (See Section XXX)

$ .20 per hour for all employees performing covered work within the meaning of Section V of this Agreement, including apprentices. (*)

Contributions shall be in the same manner that wages are paid, i.e., the contribution shall be doubled for double time hours, and time and one-half for time and one-half hours as defined in Section VII(b).

(*) *Subject to adjustment upon allocation of the remaining package during the next five increments to be made during the term of the Agreement in accordance with the terms of this Section as set forth above.*

20

21

## X(A).   WAGE CONDITIONS

(1) The regular pay day shall be once a week on such day as agreed upon between the Employer and the Union, and wages shall be paid before quitting time, and wages are to be paid in cash or check on the job site. An Employer shall not issue one (1) check for two (2) payroll periods. If the Employer pays by check, pay day shall be no later than Thursday of each week and, in the event a holiday falls on a pay day, such Employer shall pay wages on the working day before the holiday. All payroll paid on Friday must be paid in cash. In the event that such Employer issues a check or checks for wages which are not honored for payment for any reason, such Employer shall be required thereafter to pay wages in cash for a period of six months; and in the event that such Employer for a second time issues checks for wages which are not honored for payment for any reason such Employer shall be required to pay wages only in cash.

(2) An Employer may withhold not more than three (3) days' wages when necessary in order to prepare the payroll.

(3) When employees are laid off, or discharged, they shall be paid in full in cash or check on the job, and shall be allowed fifteen (15) minutes to pack their tools and overalls. If required to go to some other point or to the office of the Employer, the employees shall be paid for the time required to go to such places. When employees leave of their own accord, they shall wait until the regular pay day for the wages due them. Notwithstanding anything to the contrary contained in this Agreement, in the event of a layoff, if the Employer maintains an escrow account with the Local 580 Fund Office, said Employer may call the Fund Office and give notice that a given employee is being laid off and that sufficient money should be taken out of its escrow account to pay for the laid-off employee's benefits. In such case, if the employee involved and/or the steward on the job is notified of the layoff prior to 2:00 p.m. on the day of the layoff, the Employer does not have to give the laid-off employee any receipt in accompaniment with his wages.

(4) Any undue delay or loss of time caused to employees through no fault of their own shall be paid for by the Employer causing such delay, at the regular straight time wages.

(5) Accompanying each payment of wages shall be a separate statement identifying the Employer, showing the total earnings, the amount of each deduction, the purpose thereof, and net earnings.

(6) Any Employer who pays wages by check and whose principal place of business is located outside the Boroughs of Manhattan, the Bronx, Brooklyn, Richmond and Queens in the City of New York and Westchester, Suffolk or Nassau Counties in the State of New York must draw such checks from banks

22

23

located within the aforementioned geographic areas.

## X(B).    PACKAGE REDISTRIBUTION

Provided that the total wages paid and contributions made by the Employer shall not exceed the economic increases for wages and contributions to Funds set forth in the second paragraph of Section IX of this Agreement, at any time during the term of this Agreement, upon thirty (30) days notice to the Association and subject to the provisions of Section IX, the Union shall have the option to reallocate any portion of the wages and/or Fund contributions paid pursuant to the aforementioned Section IX. There shall be no reallocation of any part of the Pension Fund contribution from said Fund if doing so would jeopardize the Pension Fund's funding status.

## X(C).    ASSESSMENT CHECK-OFF

1.   The Employers agree to deduct from the wages of each employee covered by this Agreement and to pay to the Union such sum or sums per hour as from time to time shall be certified to the Association in writing by the Union to be the duly enacted assessment. The Union shall obtain an authorization for such deduction from each employee and such authorization shall be maintained at the Local 580 Fund Office.

2.   The authorization shall be in the form annexed to this Agreement and marked "Rider A."

3.   In the event there is any change in the amount of the assessment, such change shall be certified to the Association in writing by the Union. The Employers shall give effect to such change 30 days after the date of the certification by the Union.

4.   Payment by the Employers of these deductions from wages shall be made by purchase of receipts utilized for the making of contributions to the various Fringe Benefit Funds provided for in this Agreement.

5.   The Union agrees to indemnify and hold harmless the Employers from any and all claims, actions or proceedings arising out of said check-off.

## XI.    REPORTING TIME

(a)  Men ordered to report to a job and not put to work shall be entitled to two (2) hours' pay, except when they cannot work because of disaster on a job wherein no other trades are permitted to work, provided the men remain on the job during the said two (2) hours. Such men who are required to work during said two hours shall be guaranteed four (4) hours pay at regular straight time rates. Such men who are required to work after the lunch break shall be guaranteed seven (7) hours pay at regular straight time rates. Men employed solely for the purpose of

24

25

unloading or distributing material shall not be employed for less than seven hours.

(b) In the erection of curtain walls, when an Employer provides a shanty on the job site, said shanty shall not be located above the third floor of the building site and the employees shall not be required to leave the shanty before starting time.

## XII.    TRAVELING EXPENSES

1.    When workmen are sent outside the territory defined herein as the Metropolitan District of New York, such workmen shall receive as a minimum wage rate, the higher established hourly rate of wages paid either in Local Union No. 580's territory or in the territory to which they are sent as well as transportation expenses as follows:

(a) Work within the jurisdiction of the Northern New Jersey District Council: $10.00 per day.

(b) Work in all areas other than the jurisdiction of the Northern New Jersey District Council:

i.    $25.00 per day, for jobs lasting less than one week, plus the fare of one round trip.

ii.    $175.00 per week for jobs lasting more than one week plus the fare for one round trip; or $25.00 per working day,

26

plus the fare of one round trip each week, at the Employer's option.

2.    On jobs located outside the Metropolitan District, which require traveling at night, the Employer shall pay for, or provide meals and berth.

3.    If a workman, employed on jobs located outside the Metropolitan District, shall without the consent of the Employer, leave such work before its completion, it shall be on his own time and at his own expense.

4.    All travel time to jobs outside the Metropolitan District shall be paid at the single time rate of pay and not exceed seven hours per day.

5.    Wages shall commence from the time the workman arrives at his work.

6.    If an employee is requested to go from one jobsite to another jobsite during the workday, his travel expenses incurred in going to such second job shall be reimbursed by the Employer.

## XIII.    FOREMEN

(a) When four (4) or more employees are employed on a job, one shall be selected by the Employer to act as a working foreman and receive a foreman's wages, and the foreman is the only representative of the Employer who shall issue instructions to the workmen. On all chain link fence

27

work a foreman shall be employed. When employees are sent by the Employer to work on jobs outside the Metropolitan Area, one employee shall be designated as a foreman on such out-of-town job and receive the highest foreman's hourly rate of pay recognized in either Local No. 580's territory or in the territory to which he is sent.

(b) There shall be no restriction as to the employment of foremen. The Employer may employ on one piece of work as many foremen as in his judgment is necessary for the safe, expeditious and economical handling of the same.

(c) The Employer shall employ a foreman on all items of work pertaining to curtain wall work, such as hoisting, distribution, unloading, erection, layout, etc.

(d) The foreman shall be the agent of the Employer and shall be tried for any of his acts as foreman under the grievance and arbitration procedure hereinafter provided for in Section XXI.

## XIV.    STEWARD

(a) A Steward shall be appointed by the Union. The Steward shall be assigned to every job by the Business Agent responsible for the geographic area where the job site is located, or his designee, and shall in all cases be the second journeyman on the job and the last journeyman to leave the job. It shall

be at the option of the Business Agent whether the Steward shall be appointed from among the men on the job or in addition thereto. Such Steward shall not be laid off or discharged while the job is in progress unless such lay off or discharge is sanctioned in accordance with the grievance and arbitration procedure hereinafter provided for in Section XXI.

(b) When an accident occurs, the Steward shall take charge and render immediate and necessary care to the injured and also report the accident to the Business Agent and Local Union.

(c) It shall be the duty of the Steward to file timely, complete and accurate steward's reports with the Union on forms provided by the Union for such purpose.

## XV.    WORK LIMITATION

There shall be no limitation placed on the amount of work to be performed by any employee during working hours, and the use of machinery, tools, appliances or methods shall not be restricted or interfered with.

The Employer shall employ three (3) men on the installation of multi-flight stairs.

Whenever pre-assembled stairs are to be erected or hoisted on a jobsite, a hoisting crew of iron workers shall be employed to unload and hoist the stairs for each run of stairs, from the time the stairs

28

29

arrive at the jobsite to the time the stairs are hoisted to the floors where they are to be installed, irrespective of the equipment used for hoisting; and an additional separate erection crew of iron workers shall be employed to install that run of stairs. If a run of such stairs is being both hoisted and installed on a given day, then two (2) crews as outlined above shall be employed that day. If there is more than one (1) run of such stairs on a jobsite, separate hoisting crews and separate erection crews shall be employed as outlined above, on each run of stairs. Each hoisting crew and each erection crew shall consist of one (1) foreman and at least four (4) finishers. "Pre-assembled stairs," as used herein, are defined as stairs which are delivered to a jobsite with

(a) risers and/or treads pre-fastened to stringers or with intermediate platforms or landings pre-fastened to framing members at intermediate platforms or landings, or

(b) the risers and treads have pre-poured concrete treads.

## XVI.   TOOLS

(a) Employees employed on architectural and ornamental work shall furnish for their own use all necessary hand tools to enable them to effectively install such work. Tools broken on the job shall be replaced by the Employer, such as drills, taps, hacksaw blades, etc. No employee shall be held

30

responsible for the loss of tools or equipment in his charge.

(b) The Employer must provide a suitable tool box or shanty with lock and key for the safe keeping of tools and clothing, and the employees are to be compensated for any loss of same due to fire in or burglary from shanty or tool box in an amount not to exceed $200.00. The Employer shall pay for such loss within 10 days after such loss is reported to the Employer or his representative provided the loss is reported promptly.

## XVII.   WORKERS' COMPENSATION

(a) Every Employer shall carry adequate Workers' Compensation Insurance as may be required by the laws of the State of New York.

(b) The Employer shall also furnish adequate Marine Insurance where necessary.

(c) In the event that the Union and Allied adopt a program to provide an alternative system for Workers Compensation to provide a single carrier with a panel of doctors and an alternative claim resolution, then after a minimum of thirty (30) days notice to Allied on behalf of its members and all other signatory Employers, they shall, if required by the program, become participants in such program and be deemed by execution of this Agreement to have consented to the provisions of the Plan.

31

## XVIII. BUSINESS REPRESENTATIVE

The Business Representatives of the Union shall be permitted to visit all jobs, but will in no way interfere with the progress of the work.

## XIX.   SUBCONTRACTING

(a)  The Employer agrees not to subcontract or sublet any work covered by this Agreement to any person, firm or corporation which is not in contractual relationship with the Architectural and Ornamental Iron Workers Local Union No. 580.

(b)  Employees shall not be permitted to lump work. The Employer agrees not to offer and/or to pay less than the scale of wages established by the Agreement. The employees will not accept a bonus based on specific performance of any individual job.

(c)  An Employer who violates this Section shall be liable to the Joint Funds for the wages and fringe benefit contributions due on work performed by his subcontractor.

## XX.   APPRENTICES

(a)  The Association and the Union shall jointly maintain a system of apprenticeship which shall provide an adequate force of skilled mechanics. The apprenticeship system shall be controlled and administered by a Joint Committee in accordance

32

with the Standards of Apprenticeship Training as approved by the New York State Department of Labor, Bureau of Apprentice Training.

The Joint Committee shall consist of an equal number of representatives appointed by the Association and the Union.

(b)  The Joint Committee shall form an apprentice class each September. The size of the class shall be determined by the Joint Committee in accordance with employment conditions in the trade.

(c)  Each Employer employing four or more journeypersons, at a particular job site, must employ one apprentice when employing four to seven journeypersons, two apprentices when employing eight to eleven journeypersons, three apprentices when employing twelve to eighteen journeypersons, and one additional apprentice for every seven additional journeypersons thereafter.

(d)  An apprentice of his own volition cannot leave the employ of an Employer without the consent of the Joint Committee.

(e)  If an apprentice is temporarily laid off, and during the layoff period regularly received the specified related technical instruction, he shall receive credit, if reemployed, for such instruction toward the completion of his apprenticeship.

(f)  All apprentices shall be required to attend classroom instructions in subjects related to their

33

trade for a minimum of 144 hours per year during each year of the term of apprenticeship. If day classes are arranged, the apprentice must attend one day in each month for which he will receive a day's pay from his Employer. Such a day class will provide 8 hours of school instruction each month and the remainder of his school time must be made up in the evening. If an apprentice does not attend the scheduled school day, he shall suffer the loss of a day's pay for each day class not attended. The tuition fee for school attendance shall be paid by the apprentice. It is understood that if, for any reason, the apprentice does not fulfill his obligations and severs his connection with the school, the Joint Committee shall not be required to pay a refund or rebate any portion of the money expended by the apprentice.

(g) Upon notice from the school, that an apprentice has not satisfactorily completed a semester's work, his rate shall not be increased in accordance with the scale until the school advises that such work has been satisfactorily completed. If, for any reason, the school dismisses an apprentice, his apprenticeship shall be terminated.

(h) The Joint Committee shall arrange tests for determining the apprentice's progress in manipulative skills and technical knowledge.

(i) Apprenticeship applicants, before being accepted as apprentices, must meet the standards as

34

set by the Joint Apprentice Committee.

(j) Any apprentice who enters the Armed Forces before completing his apprenticeship shall be required, before becoming a journeyman finisher, to complete three (3) semesters at school and working at the trade.

(k) In the event of any disagreement among the members of the Joint Committee over any matter or matters before it except for the number of apprentices which results in a deadlock, such matter or matters shall be submitted for determination under the grievance and arbitration procedure as hereinafter provided in Section XXI(c).

## XXI.    GRIEVANCE AND/OR ARBITRATION PROCEDURES

(a) Any grievance, complaint, or dispute between the Union and the Employer arising out of this Agreement, or as to the meaning, interpretation, application or alleged violation of any provision or provisions of this Agreement shall be handled in the first instance by an officer of the Union designated by the Union and a representative of the Employer involved who is a member of the Association.

(b) If the representatives of the Union and the Employer fail to reach an agreement within five (5) work days, the grievance, complaint, or dispute shall be handled by a designee or designees of the Union

35

and the Association. The designee of Allied shall be a member of the Association or a permanent employee of the Association.

The aggrieved party shall file a statement of the grievance, complaint, or dispute with the Association or the Union, as the case may be.

The designees shall meet within two (2) work days after the receipt of written notification.

(c) If the designees of the Union and the Association fail to reach agreement within three (3) work days after they meet, as provided above, the grievance, complaint, or dispute shall be submitted for final and binding determination to Eric J. Schmertz, as the Impartial Arbitrator. If for any reason Mr. Schmertz is incapacitated or for any other reason is unable to act expeditiously, he shall designate a substitute Arbitrator. If Mr. Schmertz is unable to make such designation, the Union and the Allied Association shall promptly make such designation. Should they fail to agree on a substitute Arbitrator, the procedures of the American Arbitration Association, shall be utilized to resolve these disputes on a case by case basis until the Union and the Allied Association agree on a permanent Arbitrator.

The Impartial Arbitrator shall have all the powers granted to arbitrators pursuant to the Civil Practice Law and Rules of Procedure of the State of New York and shall be authorized to compel the production of

36

books and records of any kind or type which may be involved in a dispute. The decision of the Impartial Arbitrator shall be final and binding on the Employer and the Union.

(d) If the party initiating the grievance, complaint or dispute fails to submit the matter to the Impartial Arbitrator within thirty (30) work days after the designee of the Union and the Employer are unable to reach agreement, the matter shall be dropped.

(e) The expense of the arbitration procedure shall be borne equally by the Employer and the Union.

(f) The foregoing provisions for arbitration are not intended and shall not be construed as in any way qualifying or making subject to change any provisions of this Agreement including, but not limited to the handling of negotiations for a new Agreement.

## XXII.  VACATION FUND

(a) The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Vacation Fund (formerly Benefit Fund of Local 580). The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions

37

of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Vacation Fund shall continue to be administered by the Agreement and Declaration of Trust dated October 17, 1950, and restated December 17, 1975, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employers shall be used exclusively to provide vacation benefits to eligible employees in such form and amount as the Trustees of the Vacation Fund may determine, and the administration expenses of the Vacation Fund.

(d)  For the purpose of this Article the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

38

## XXIII.  PENSION FUND

(a)  The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Pension Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Pension Fund shall continue to be administered by the Agreement and Declaration of Trust dated as of January 1, 1954, and restated December 17, 1975, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employers shall be used exclusively to provide pension benefits to eligible employees in such form and amount as the Trustees of the Pension Fund may determine, and the administration expenses of the Pension Fund.

39

(d) For the purpose of this Article the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

## XXIV.  INSURANCE FUND (WELFARE)

(a)  The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Insurance Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Insurance Fund shall continue to be administered by the Agreement and Declaration of Trust dated as of January 1, 1946, and restated December 17, 1975, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employers shall be used exclusively to provide group insurance, accidental death and dismemberment insurance, hospital expense insurance, surgical expense insurance, medical expense insurance to eligible employees and their families, as well as temporary disability benefits to eligible employees in such form and amount as the Trustees of the Insurance Fund may determine, and the administration expenses of the Insurance Fund.

The Trustees shall, out of the funds in their possession, pay or provide for the payment of premium on policy or policies of Group Insurance for sickness benefits which shall provide insurance benefits required to be made and paid under Chapter 600 of the Laws of the State of New York approved and effective April 13, 1949.

It is further agreed that this Agreement and the specific provision for sickness benefits hereunder, and such other benefits hereinabove mentioned as the Trustees may determine, shall be in lieu of any obligation imposed upon Employers or employees for insurance and contribution required or provided for in such mentioned law.

It is further agreed that payment by the Employer with respect to or required by any Federal, State or Municipal legislation which may be enacted during

40

41

the term of this Agreement, and which would require the Employer to pay or contribute toward the payment of life insurance or health or hospitalization or medical benefits, shall be credited to the amount required to be paid thereunder, unless the Insurance Plan effective hereunder shall furnish the benefits required by any such legislation.

(d)  For the purpose of this Section the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

## XXV.  ANNUITY FUND

(a)  The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Annuity Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Annuity Fund shall continue to be administered by the Agreement and Declaration of Trust dated January 27, 1964, and restated December 17, 1975, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employer shall be used exclusively to provide for Annuity Benefits in such manner and amount as the Trustees of the Annuity Fund may determine, and administrative expenses of the Annuity Fund, provided, however, that the contributions shall be paid on behalf of individual employees and credited to the individual employee's account in the Fund.

(d)  For the purpose of this Article the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

## XXVI.  THE ORNAMENTAL METAL INSTITUTE OF NEW YORK FUND

(a)  The Ornamental Metal Institute of New York Fund or its successor in interest shall be administered

42

43

pursuant to the Agreement and Declaration of Trust dated September 5, 1972, which, as amended from time to time, is hereby incorporated by reference and made part hereof.

(b) The contributions shall be used to advance the interests of architectural, ornamental and miscellaneous metal industry in the Greater New York area and of those who are engaged in it through such programs and activities, and in such manner and amount, as the Trustees of the Fund in their discretion may determine are likely to foster greater use of the industry's products and services, expanded opportunities for employment, higher efficiency, the elimination of sub-standard working and safety conditions and related purposes as more fully specified in the Agreement and Declaration of Trust dated September 5, 1972, as amended from time to time, and for the organization and administration of the Fund.

(c) The required Employer contributions shall be paid by the Employer purchasing receipts from The Ornamental Metal Institute of New York Fund through the Local 580 Fund Office. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

44

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

## XXVII. APPRENTICE-JOURNEYMAN EDUCATIONAL FUND

(a) The Apprentice-Journeyman Educational Fund shall continue to be administered pursuant to the Agreement and Declaration of Trust dated October 15, 1969, and restated February 1, 1976, which, as amended from time to time, is hereby incorporated by reference and made part hereof.

(b) The Trustees shall determine annually the number of apprentices to be admitted into the apprenticeship program for the year. If the Trustees cannot agree on the number of apprentices to be admitted in any one year, such number shall be determined by arbitration which shall be provided for in the Agreement and Declaration of Trust.

(c) During the term of this Agreement or any extension or renewal thereof, the Trustees of the Apprentice-Journeyman Educational Fund shall

45

assume all duties of the Joint Committee of Apprentices referred to in Section XX of this Agreement.

(d) The required contributions shall be paid by the Employer purchasing receipts from the Apprentice-Journeyman Educational Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

## XXVIII. INSTITUTE OF THE IRONWORKING INDUSTRY FUND

The required contributions shall be paid by the Employer purchasing receipts from the Local 580 Fund Office. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are

entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

## XXIX. PENSIONERS' SUPPLEMENTAL FUND

(a) The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Pensioners' Supplemental Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the

contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Pensioners' Supplemental Fund shall continue to be administered by the Agreement and Declaration of Trust dated July 1, 1982, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employer shall be used exclusively to provide for Pensioners' Supplemental Benefits in such manner and amount as the Trustees of the Pensioners' Supplemental Benefits Fund may determine, and administrative expenses of the Pensioners' Supplemental Benefits Fund.

(d)  For the purpose of this Article the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

## XXX.    SCHOLARSHIP FUND

(a)  The required Employer contributions shall be paid by the Employer purchasing receipts from the Local 580 Scholarship Fund. The said receipts shall be given to the employees in accompaniment with their weekly pay and also at such other times when employees are entitled to receive pay as

48

required by the provisions of Section X of this Agreement.

The provisions of Section XXXII(b) shall govern in the event an Employer fails to place said receipts in the employees' weekly pay envelopes.

The required Employer contributions to this Fund shall be made for each straight time hour paid to each employee at the rates stated in Section IX, and for each premium hour paid to each employee, the contribution shall be at premium rates. Premium time is defined in Section VII(b).

(b)  The said Scholarship Fund shall continue to be administered by the Agreement and Declaration of Trust dated July 1, 2003, as amended from time to time, which is hereby incorporated by reference and made part hereof.

(c)  The contributions of the Employer shall be used exclusively to provide for Scholarship Benefits in such manner and amount as the Trustees of the Scholarship Fund may determine, and administrative expenses of the Scholarship Fund.

(d)  For the purpose of this Article the Union shall be considered as a contributing Employer and shall make contributions on behalf of the Business Agents, Business Manager/Financial Secretary-Treasurer, and Executive Secretary of the Union who shall be participants of the Fund.

49

### XXXI. IMPACT

This Agreement shall be reopened on January 1, 2006 solely for the purpose of discussing the possible incorporation of the IMPACT program. In the event the parties cannot agree to the incorporation of IMPACT at that time, the contract shall be reopened every six months thereafter solely for the same purpose. The cost of the IMPACT program shall be deducted from the economic package increase set forth in Section IX .

### XXXII. TRUST FUND PROTECTION

(a) Each of the Agreements and Declarations of Trust referred to in Sections XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXIII, XXIX and XXX hereof shall be deemed incorporated by reference into this Agreement and made a part hereof.

(b) (1) Failure of an Employer to make contributions as required in Section IX and/or to place said receipts in the employees' weekly pay envelopes as required in Sections XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXVIII, XXIX, and XXX or as may be required to any new Fund established during the term of this Agreement, shall constitute a breach of this Agreement. If by the following pay day said receipts are not included with their weekly pay, the Union, notwithstanding anything to the contrary contained in this Agreement, shall strike and remove its members from the work

of the delinquent Employer until such Employer pays the full amount of contributions owed and also pays the employees who are on strike their regular rate of pay for all time lost during such strike.

All new contributing Employers shall be required to make Trust Fund contributions by certified check for a period of six (6) months.

(2) An Employer who becomes delinquent in payment of contributions, as hereinabove provided, shall be required to post bond to secure future payments by such Employer to the respective Funds.

If an Employer goes out of business owing money to one or more Funds and an Employer establishes a new business in which any principal, officer or stockholder of the former Employer is affiliated with (directly or indirectly through relatives or friends), or is employed by the new Employer, and such new Employer fails to make previously required contributions as required in Section IX and/or to place said receipts in the employees' weekly pay envelopes as required in Sections XXII, XXIII, XXIV, XXV, XXVI, XXVII, XXVIII, XXIX and XXX or as may be required to any new Fund established during the term of this Agreement, said failure shall constitute a breach of this Agreement. If by the following work day said receipts are not given to said employees, the Union, notwithstanding anything to the contrary contained in this Agreement, shall strike and remove its members from the work

50

51